**2015-1492, -1589, -1660**

# United States Court of Appeals
# for the Federal Circuit

PRICEPLAY.COM, INC.,

*Plaintiff – Appellant,*

v.

AOL ADVERTISING, INC.,

*Defendant – Appellee,*

AND

FACEBOOK INC.,

*Defendant – Appellee,*

AND

GOOGLE INC.,

*Defendant – Appellee.*

Appeals from the United States District Court for the District of Delaware in
No. 1:14-cv-00092-RGA, Honorable Richard G. Andrews
and from the United States District Court for the Northern District of California in
Nos. 3:14-cv-04830-SI and No. 3:14-cv-04828-SI, Honorable Susan Y. Illston.

## BRIEF OF APPELLANT PRICEPLAY.COM, INC.

Scott M. Daniels
Darrin A. Auito
WESTERMANHATTORI DANIELS
& ADRIAN
1250 Connecticut Avenue, NW
Ste. 700
Washington, D.C. 20036
202-822-1100 (t)
202-822-1111 (f)
sdaniels@whda.com
dauito@whda.com

*Counsel of Appellant*
*Priceplay.com, Inc.*

## CERTIFICATE OF INTEREST

Counsel for Priceplay.com, Inc. certifies the following:

1.      The full name of every party or amicus represented by us is:

Priceplay.com, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is: Priceplay.com, Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by us are: N/A

4.      The names of all law firms and the partners and associates that appeared for the parties or amicus now represented by us in the trial court or agency or are expected to appear in this court are:  Westerman, Hattori, Daniels, and Adrian LLP; Scott M. Daniels, Thomas E. Brown, Hsin-I (Cindy) Chen and Darrin A. Auito; Bayard, P.A., Steve Brauerman.

Dated: June 18, 2015

/Scott M. Daniels/
_____

Scott M. Daniels, Esq.
Darrin A. Auito, Esq.
WESTERMANHATTORI DANIELS & ADRIAN
1250 Connecticut Ave., NW.
Washington, D.C. 20036
(202) 822-1100(t)
(202) 822-1111(c)
*sdaniels@ whda.com*
*dauito@whda.com*
*Counsel for Appellant*
*Priceplay.com, Inc.*

i

# TABLE OF CONTENTS

**<u>PAGE</u>**

STATEMENT OF RELATED CASES ...................................................................v

JURISDICTIONAL STATEMENT .......................................................................1

    A.  Basis for the Jurisdiction of the U.S. District Court – District of Delaware...1

    B.  Basis for the Court of Appeals Jurisdiction....................................................1

    C.  Filing Dates Establishing Timeliness .............................................................1

    D.  Assertion regarding Final Order ....................................................................1

STATEMENT OF ISSUES ..................................................................................3

STATEMENT OF THE CASE...............................................................................3

STATEMENT OF THE FACTS ........................................................................... 5

SUMMARY OF THE ARGUMENT ....................................................................9

STANDARD OF REVIEW .................................................................................11

ARGUMENT ......................................................................................................12

    A.  The Relevant Law.........................................................................................12

    B.  The District Court Decision.........................................................................15

    C.  The Asserted Claims are Patent-Eligible....................................................16

CONCLUSION & STATEMENT OF RELIEF SOUGHT....................................25

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Alice Corp. v. CLS Bank Int'l.*,
134 S. Ct. 2347 (2014) ...................... 3, 4, 9, 10, 13, 14, 15, 16, 19, 20, 22, 23, 24

*Alston v. Parker*,
363 F.3d 229 (3d Cir. 2004) ...................................................................11

*Association for Molecular Pathology v. Myriad Genetics, Inc.*,
133 S. Ct. 2107 (2013) ............................................................... 12, 13

*Bilski v. Kappos*,
561 U.S. 593 (2010) ............................................................. 12, 13, 16

*DDR Holdings v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ...........................................................16

*Diamond v. Diehr*,
450 U.S. 175 (1981) .........................................................................19

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ..........................................................................14

*In re Schrader*,
22 F.3d 290 (Fed. Cir. 1994) ..............................................................15

*Juniper Networks, Inc. v. Shipley*,
643 F.3d 1346 (Fed. Cir. 2011) ...........................................................11

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
714 F.3d 1277 (Fed. Cir. 2013) ...........................................................12

*Mackay Radio & Tel. Co. v. Radio Corp. of Am.*,
306 U.S. 86 (1939) ..........................................................................19

*Mayo Collaborative Services v. Prometheus laboratories, Inc.*,
    132 S. Ct. 1289 (2012) ................................................... 4, 9, 10, 13, 14, 15, 16, 23

*Nami v. Fauver*,
    82 F.3d 63 (3d Cir. 1996) ................................................................................ 12

*O'Reilly v. Morse,*
    56 U.S. 62 (U.S. 1854) ..................................................................................... 14

*OIP Techs, Inc. v. Amazon.com, Inc.*,
    2012 WL 3985118 (N.D. Cal. Sept. 11, 2012)................................................ 15

*Planet Bingo, LLC v. VKGS LLC,*
    576 F. App'x 1005 (Fed, Cir. 2014).................................................................. 15

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
    627 F.3d 859 (Fed. Cir. 2010) ......................................................................... 12

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ................................................................... 16, 17

## Statutes

28 U.S.C. § 1295(a) ............................................................................................1

28 U.S.C. § 1331 .................................................................................................1

28 U.S.C. §1338(a) .............................................................................................1

35 U.S.C. § 101 ..................................................................... 3, 4, 12, 14, 16, 19

## Rule

Fed. R. Civ. P. 12(b)(6).............................................................................. 11, 12

## STATEMENT OF RELATED CASES

Appellant Priceplay.com, Inc. (Priceplay.com) was previously involved in litigation involving U.S. Patent Nos. 8,050,982 ("the '982 patent") and 8,494,917 ("the '917 patent") before U.S. District Courts: *Priceplay.com Inc. v. LinkedIn*, Case No. 4:14-cv-04824 (filed in Delaware February 27, 2014, transferred to the Northern District of California on October 30, 2014 ); *Priceplay.com Inc. v. Google,* Case No. 3:14-cv-04828 (filed in Delaware March 26, 2014, transferred to the Northern District of California on October 30, 2014); and *Priceplay.com Inc. v. Facebook,* Case No. 3:14-cv-04830 (filed in Delaware April 22, 2104, transferred to the Northern District of California on October 30, 2014).

On January 1, 2015, in *Priceplay.com v. LinkedIn,* the court stayed the case and vacated all dates pending the outcome of the Covered Business Method Reviews filed by Google and LinkedIn. On April 20, 2015, in *Priceplay.com v. Facebook*, the court adopted Judge Andrews' order of March 18, 2015 granting AOL's Motion to Dismiss in the District of Delaware and dismissed the complaint. Priceplay.com appealed the decision to the U.S. Court of Appeals for the Federal Circuit ("CAFC"), Case No. 15-1589.  On May 5, 2015, in *Priceplay.com v. Google*, the court adopted Judge Andrews' order of March 18, 2015 granting AOL's Motion to Dismiss in the District of Delaware and dismissed the complaint.

Priceplay.com appealed the decision to the U.S. Court of Appeals for the Federal Circuit ("CAFC"), Case No. 15-1660.

A copy of the decision rendered by the District of Delaware is included in the Addendum.

There are no other appeals, reexaminations, interferences or other proceedings known to Appellant, or Appellant's legal representative that will directly affect or be directly affected by or have a bearing on the Court of Appeals' decision in the pending appeal.

Google and LinkedIn, however, have asked the Patent Trial and Appeal Board to review the claims of U.S. Patent Nos. 8,050,982 and 8,494,917 and determine if they are unpatentable under 35 U.S.C. §§ 101 & 103. The two pending matters are Covered Business Method Reviews, *Google and LinkedIn v. Priceplay.com,* Case No. 2015-00024 (the '917 patent) and Case No. 2015-00025 (the '982 patent). CBM No. 2015-00024 for the '917 patent and CBM No. 2015-00025 for the '982 patent have been instituted.

# JURISDICTIONAL STATEMENT

## A.    Basis for the Jurisdiction of the U.S. District Court – District of Delaware

Jurisdiction in the District Court was based on 28 U.S.C. §§ 1331 and 1338(a).

## B.    Basis for the Court of Appeals Jurisdiction

The CAFC has appellate jurisdiction over this appeal by the patent owner Priceplay.com, Inc., from the final adverse decision of a District Court having jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). 28 U.S.C. § 1295(a).

## C.    Filing Dates Establishing Timeliness

A Notice of Appeal was timely filed with the CAFC on March 25, 2015, from the adverse decision dated March 18, 2015. A consolidation Order was entered on May 21, 2015 consolidating United States District Court for the District of Delaware Case No. 1:14-cv-00092-RGA, and United States District Court for the Northern District of California Case Nos. 3:14-cv-04830-SI and No. 3:14-cv-04828-SI. The deadline for filing this Appellant's Brief is June 22, 2015.

## D.    Assertion regarding Final Order

The present appeal is from the final adverse decision by the District Court dated March 18, 2015, granting AOL Advertising, Inc.'s ("AOL") Motion to Dismiss with regard to all of the claims in the '982 and '917 patents. Pursuant to

1

the parties' request, the Northern District of California adopted as its own the final adverse decision of the Delaware court.  Thus, Judge Andrews' decision of March 18, 2015 is applicable to all three Appellees and all three cases.

## STATEMENT OF ISSUES

1.     Did the United States District Court for the District of Delaware ("District Court") err in determining that the claims in Priceplay.com's '982 and '917 patents are patent-ineligible and therefore invalid under 35 U.S.C. § 101.

2.     More particularly, did the District Court err by failing to analyze whether Priceplay.com's specific combination of features sufficiently narrowed the asserted claims, so that those claims "pose … no risk of preemption" and therefore recite patent-eligible subject matter under the second part of the *Alice* test.

## STATEMENT OF THE CASE

This appeal arises out of a patent infringement action in the District Court of Delaware. On January 22, 2014, Priceplay.com filed the action against AOL for infringement of the '982 and '917 patents.  Priceplay.com accused AOL of infringing those patents by selling ad space to ecommerce merchants via its claimed system and a method.  That system and method integrate an ***interactive competitive activity*** and ***interactive bidding*** into the specific combination recited in the '982 and '917 patent claims.  The patents are based on an original application filed in 1999.  The specifications of the two patents are essentially identical, and for convenience Priceplay.com refers herein to the '982 patent.

3

On June 30, 2014 Priceplay.com filed a Second Amended Complaint accusing AOL Advertising, Inc., essentially substituting AOL Advertising for AOL.

On July 28, 2014, AOL Advertising filed a Motion to Dismiss Priceplay.com's Second Amended Complaint for failing to state a claim for patent infringement, alleging that the patents-in-suit are patent-ineligible under 35 U.S.C. § 101. The District Court granted AOL Advertising's Motion to Dismiss on March 18, 2015. It is this Order that is the subject of the present appeal by Priceplay.com.

Priceplay.com appeals because the District Court misapplied the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l.*, 134 S. Ct. 2347 (2014). The District Court acknowledged the two-part test in *Alice* for determining patent-eligibility, including the second part which asks whether "an element or combination of elements" is recited in the claims that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice Corp.*, 134 S. Ct. at 2355, citing *Mayo Collaborative Services v. Prometheus laboratories, Inc.*, 132 S. Ct. 1289 (2012). The District Court erred, however, when it analyzed the claim limitations ***in isolation***, rather than in the ***combination*** claimed. Because of this error, the District Court failed to recognize that the claims were sufficiently narrowed by the

4

combination of those limitations so that they do not "risk disproportionately tying up the use of the underlying" ideas.  *Id.*

## STATEMENT OF THE FACTS

The Abstract of the '982 specification summarizes the subject matter of the '982 patent as a "business process … for conducting business transactions over the Internet, allowing buyers an opportunity to reduce the price of a product/service based on the buyer's performance during a Price-Determining-Activity (PDA)."

The "Field of the Invention" of the '982 specification states that the

> present invention relates generally to systems and methods of ***doing business over a global communications network*** such as the Internet, and more particularly to systems and methods ***wherein various forms of competition and/or entertainment*** are used to determine transaction prices between buyers and sellers.

(A16[1] - Column 1, lines 15-20, emphasis added).

The '982 specification then describes the simplistic state of the art as of its June 1999 filing date, the earliest days of Internet commerce.  Several prior art systems for conducting e-commerce over the Internet are described in the "Background" section of the '982 patent, among them Amazon.com, Priceline.com, VerticalNet.com, Onsale.com and eBay.  None of these systems, however, allowed a buyer to engage in an auction ***and*** a competitive activity which ultimately determined the price of the product or service to be secured, based on

---

[1] References to the Appendix are "A1 – A206."

5

the buyer's performance during the auction and competitive activity.  (A16 - Col. 1, line 65 to Col. 2, line 3).

The most relevant system for conducting an e-commerce system was crude indeed.  It was described in the newspaper article "E-Commerce That May Be Closer to Home:  Key is Safe Settlement of the Bill," Asahi Shimbun (Tokyo) morning edition, June 22, 1996 (hereinafter, "Asahi").  Asahi describes a system which allows a user to play games of paper-rock-scissors to determine the price for a product.  The user decides whether (or not) to purchase a product and makes the ensuing request to purchase the product after the price has been determined.  Although Asahi describes a competitive activity, the disclosed e-commerce method is completely different from '982 and '917 claims in that it does not include an auction component.  And as with the prior art systems described in the Background section, no actual purchase occurs in Asahi until *after* the price is determined.

On the other hand, a stated objective of the '982 and '917 patents is to provide an alternative and novel method of conducting e-commerce in which both buyers and sellers are motivated to complete a deal.

> Sellers are able to attract buyers using the marketing incentive that buyers can reduce the price of the offered product or service by performing well at the specified activity.  Sellers are willing to put forth the initial offer of a certain price range, in hopes that the average price range of the product over time will be a profitable price within the range, based upon the average performance of potential buyers that is expected to occur.  Buyers, on the other hand, are willing to accept the possibility of paying the highest price within the range, in

6

> exchange for the opportunity to pay the lowest price (or any lower price) within the range if they can achieve a certain level of performance at the specified activity.

(A16 - Column 2, line 66 – column 3, line 10).

Each claim of the '982 and '917 patents recites performance of an Internet sales transaction involving the determination of a sale price, *via the combination of (1) the result of an auction and (2) the result of a competitive activity by the buyer*.  Because the sale price is based on the combined results of the auction and the competitive activity, *the highest bidder in the auction does not always win*.  This unconventional auction format means that claim 1 does not seek to embrace all auctions – in fact, when challenged at the hearing on AOL's motion to dismiss, AOL's counsel was unable to identify in the art any such combination of features.  (*See,* Transcript of Motion to Dismiss, pages A199 – A200).

The claims of '982 patent – which the District Court found to be representative of the asserted claims (Decision at 2) – additionally require the step of "receiving data representing *a binding commitment* from the buyer via the global communication network to purchase a product for *a price that will be* partially based upon the buyer's participation in an auction and participation in a competitive activity that is in addition to placing bids in the auction and that is collateral to the price and associated with the product being purchased" (A16 - Claim 1, Column 11, lines 8-14; emphasis added).  The buyer does not initially

7

know the price of the product, but it is bound to buy the product for a price, even though that price has ***not yet*** been determined.

Claim 1 of the '982 patent also requires that the "competitive activity … [be] ***associated with*** the product being purchased" (emphasis added). The '982 specification discloses examples of such association. For instance, a buyer of a Mark McGwire baseball card, in addition to participating in an auction, competes in "a Mark McGwire trivia quiz of ten questions." (A18 - Column 6, lines 49-67).

Claim 1 of the '982 patent further requires "an algorithm to calculate the price of the product based at least partially upon the results of the participation of the buyer in the competitive activity and at least partially based on results of the auction; wherein the price is at least partially dependent on the outcome of the competitive activity" (A16 - Claim 1, Column 11, lines 17-22; emphasis added). Each of the remaining claims of the '982 and '917 patents requires a similar "price determining algorithm."

Claim 1 of the '982 patent recites:

*A system comprising multiple databases accessible by at least one computer server, wherein the system is programmed to perform the steps of a sales transaction, the steps comprising:*

*communicating via the global communication network to a buyer;*

***receiving data representing a binding commitment from the buyer*** *via the global communication network to purchase a product for a price that* ***will be partially based upon the buyer's participation in an auction*** *and* ***participation in a competitive activity that is in addition***

8

>*to placing bids in the auction and that is collateral to the price and associated with the product being purchased;*
>
>*wherein the competitive activity is required as part of the sales transaction; and*
>
>*using **an algorithm to calculate the price** of the product based at least partially upon the results of the participation of the buyer in the competitive activity and at least partially based on results of the auction; wherein the price is at least partially dependent on the outcome of the competitive activity.*

(Emphasis added).

The remaining claims of the '982 patent further refine the elements of the claimed system. For instance, dependent claim 2 additionally requires "***at least two participants*** participating in the competitive activity and the auction" (emphasis added). Claim 3 recites the further step of "receiving data representing a ***second binding commitment from the second buyer*** to purchase the product for a second price; the second price will be at least partially based on the competitive activity and the auction" (emphasis added).

## SUMMARY OF THE ARGUMENT

The "fundamental concept" of the asserted claims under the first part of the *Mayo/Alice* test is the performance of a sales transaction over the Internet. (Decision at A6; *see also* A16 - Column 1, Lines 16-20 & A21 the '982 claims).

In the second part of the *Mayo/Alice* test, a court "must distinguish between patents that claim the "'buildin[g] block[s]'" of human ingenuity and those that

9

integrate the building blocks into something more, *Mayo*, 132 S. Ct at 1303, thereby 'transform[ing]' them into a patent-eligible invention, *id.*, at 1294. The former 'would risk disproportionately tying up the use of the underlying' ideas, *id.*, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Alice Corp.*, 134 S. Ct. at 2354-55.

Priceplay.com's representative claim 1 in the '982 patent does not claim the fundamental concept of performing a sales transaction over the Internet, nor does it merely stack a series of building blocks on top of one another. Rather, claim 1 *integrates* at least four limitations – an auction, a competitive activity, association of the product with the competitive activity, a binding commitment by the customer to buy before the competitive activity is completed – into a precise, but effective, system for marketing products or services over the Internet.

Claim 1 of the '982 patent transforms what was in the art into a patent-eligible invention because its elements "individually and 'as an ordered combination'" greatly narrow that concept by requiring that the **result of an auction** be combined with the **result of the "buyer's participation in an activity"** to determine the sale price. Also, the product or service to be bought must have some **association** of with the competitive activity. Finally, the '982 claims recite

10

the additional step of receiving "a binding commitment" from the buyer ***prior to*** completion of the competitive activity and the auction.

Moreover, the various dependent claims further narrow the scope of the claims.  For instance, claim 6 of the '982 patent depends on claim 1 and requires the additional "step of ***accepting payment information*** from the buyer over the global communications network; and the payment information is accepted after receiving the data representing the ***binding commitment*** and before the price being paid." (Emphasis added).

None of these claimed elements is special in itself, but in the specific combination recited in claim 1 of the '982 patent, they form an integrated and particular system for promoting sales on the Internet.  Priceplay.com's claims – far from preempting a fundamental concept of e-commerce based systems, processes, and methods – embrace a narrow patent-eligible application of an e-commerce concept to a new and useful end.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal for failure to state a claim under the law of the regional circuit in which the district court sits, here the Third Circuit.  *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (citation omitted).  The Third Circuit exercises plenary review of dismissals for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Alston v. Parker*, 363 F.3d

229, 232-33 (3d Cir. 2004) (citing *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)).

The Ninth Circuit reviews appeals of a dismissal for failure to state a claim under

Fed. R. Civ. P. 12(b)(6) de novo. *K-Tech Telecomms., Inc. v. Time Warner Cable,*

*Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013).   This Court reviews questions

concerning patent-eligible subject matter under 35 U.S.C. § 101 without deference.

*Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 867 (Fed. Cir.

2010).

## ARGUMENT

### A.    The Relevant Law

Section 101 of the Patent Act defines the subject matter eligible for patent

protection:

> *[w]hoever invents or discovers any new and useful process, machine,*
> *manufacture, or composition of matter, or any new and useful*
> *improvement thereof, may obtain a patent therefor, subject to the*
> *conditions and requirements of this title.*

35 U.S.C. §101.

"In choosing such expansive terms … Congress plainly contemplated that

the patent laws would be given wide scope," and "took this approach to patent

eligibility to ensure that ingenuity should receive a liberal encouragement." *Bilski*

*v. Kappos*, 561 U.S. 593, *3225 (2010).  "Laws of nature, natural phenomena, and

abstract ideas are not patentable." *Association for Molecular Pathology v. Myriad*

*Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (internal quotation marks and brackets omitted).

The Supreme Court has described a two-step test for identifying patent-eligible claims, wherein courts first determine whether the claims at issue are directed to a patent-ineligible concept. If so, courts then ask whether the claimed elements, considered both individually and "as an ordered combination," would be unduly exclusionary to the point of stifling innovation. *Alice Corp.*, 134 S. Ct. at 2355.

The Supreme Court has emphasized that the concern at the root of this exclusionary principle is one of ***pre-emption***. *Alice Corp.*, 134 S. Ct. at 2354, citing as an example *Bilski,* 561 U.S. at 611-12 (confirming that the patent "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea"). Laws of nature, natural phenomena, and abstract ideas are "the basic tools of scientific and technological work." *Myriad* 133 S. Ct. at 2116. "'[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws.'" *Mayo,* 132 S. Ct. at 1293. In *Alice*, the Supreme Court expressly warned "'that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity,'"

134 S. Ct. at 2354, citing *Mayo*, 132 S. Ct. at 1301 (in turn citing *O'Reilly v. Morse,* 56 U.S. 62, 113 (1854)).

The Supreme Court, however, tempered this fear of monopolization, cautioning that courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law," citing *Mayo*, 132 S. Ct. at 1293. As if speaking of the District Court's decision here, the Supreme Court explained that "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.' *Id.* at 1293. Accordingly, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice Corp.*, 134 S. Ct. at 2354.  Application of such concepts to a new and useful end, remains eligible for patent protection. *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

The Supreme Court concluded that in applying the §101 exception, courts must distinguish between those patents that claim the "'buildin[g] block[s]'" of human ingenuity and those that integrate the building blocks into something more, *Mayo,* 132 S. Ct. at 1303, thereby "transform[ing]" them into a patent-eligible invention, *id.*, at 1294. "The former 'would risk disproportionately tying up the use of the underlying' ideas, *id.*, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under the patent laws." *Alice Corp.*, 134 S. Ct. at 2354-55.

14

## B.    The District Court Decision

The District Court addressed the first part of the *Mayo/Alice* test by finding that "the '982 and '917 claims are directed to the abstract idea of a sales transaction."  Decision at A6.  Priceplay.com does not dispute this finding.

As for the second part of the test, the District Court identified certain substantive limitations of claim 1 of the '982 patent, specifically, the requirements of

1) the buyer committing to buying the product before determining the price through competitive activity and auction;

2) the competitive activity being "associated with the product being purchased"; and

3)  the use of an algorithm to calculate price.

Decision at A8.

The District Court then noted that three distinct aspects of the claimed invention – conduct of an auction, management of a game, and e-commerce price selection and optimization – had each, ***individually***, been held to be patent-ineligible.[2]  Without further analysis, the District Court concluded that these "limitations … do not transform the abstract idea because they 'simply instruct the practitioner to implement the abstract idea with routine, conventional activity."

---

[2] The District Court cited *In re Schrader*, 22 F.3d 290, 295 (Fed. Cir. 1994); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014); and *OIP Techs, Inc. v. Amazon.com, Inc.*, 2012 WL 3985118, at *12 (N.D. Cal. Sept. 11, 2012)

Decision at 8, citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014). Conspicuously absent from the District Court's analysis is any explanation of why Priceplay.com's claimed combination of features, integrated in the specific form recited in claim 1 of the '982 patent, would not pass the preemption second part of the *Mayo/Alice* test.

### C.    The Asserted Claims are Patent-Eligible

Although the Supreme Court has not provided express guidance for assessing whether a claim does "significantly more" than describe an abstract idea, *Alice* and *Bilski* identify three possible alternative guideposts—the preemptive effect of the claim, its degree of detail, and whether the claim constitutes an improvement upon technology. The claims here plainly satisfy the "significantly more" standard.

The claim's preemptive effect—the extent to which it would "inhibit further discovery"—informs whether the claim has satisfied the second step of the Section 101 inquiry. *Alice Corp.*, 134 S. Ct. at 2354 (quotation omitted). Claims that "do not attempt to preempt every application of the idea" generally satisfy the Section 101 threshold. *DDR Holdings v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014). Thus, claims that "recite a specific way" of accomplishing a task— including a specific kind of automation that "resolv[es] [a] particular Internet-

centric problem"—do not broadly preempt any asserted abstract idea, and are therefore patent-eligible. *Id*.

By contrast, where claims "add nothing of practical significance to the underlying abstract idea," they are typically patent-ineligible because their effect is to preempt innovation with respect to the entire abstract idea. *Ultramercial,* 772 F.3d at 716. And for the same reason, merely "[n]arrowing the abstract idea" to a "particular environment" generally does not render it patent-eligible, as the claim would still wholly preempt that idea within the limited environment. *Id*. (citation omitted).

Priceplay.com's claims do not preempt a broad building block that would unduly obstruct innovation. Instead, the claims here describe a very specific combination of auction, competitive activity, association of activity and product, and buyer commitment, carving out a narrow, but useful, invention. There is no risk that the claims would foreclose innovation by others.

Plus, the combination of an auction and a competitive activity in a sales transaction *is more* than the addition of "well-understood, routine, conventional activity." During the October 27, 2014 Oral Hearing, AOL's counsel had *no answer* to the District Court's question: "Have you ever seen anything like this on the internet? You can ask your colleagues, or both your colleagues." *See,* Transcript of Motion to Dismiss, pages A199 – A200. If the novel combination of

elements were merely the addition of "well-understood, routine, conventional activity," then the transcript would have read quite differently.

On this question of what came before the Priceplay.com invention, the District Court cites AOL's story of Babe Ruth's contract negotiations in 1922, "*where Ruth and the owners of the New York Yankees agreed to flip a coin to determine the terms of Ruth's new contract. If Ruth won he would receive his preferred terms (including salary), but if the owner's won they would receive their preferred terms.  Ruth won the coin toss and received his preferred terms.*" Decision at A9 – A10.  This example, however, is far removed from the specific combination of features in Priceplay.com's claimed system.

Priceplay.com's claimed system requires, *inter alia*, "***the buyer's participation in an <u>auction</u> and participation in a competitive activity** that is in addition to placing bids in the auction and that is collateral to the price and <u>associated with</u> the product being purchased*."  (A21 - Claim 1 of '982 Patent; emphasis added).  Priceplay.com submitted the following claim constructions in response to the District Court's October 9, 2014 Oral Order:

> "**auction**" means a process for selling a product or service that includes taking one or more bids from one or more bidders and selling to the winning bidder; an auction is not a PDA."  (Claims 1-3, 7-9 and 12 of the '982 patent) (Claims 1, 4, 7, 13 and 15 of the '917 patent);

> "**associated with**" means that the competitive activity is related to the product being purchased, *e.g., the steps creating an advertisement and*

> *selecting desired audience demographics are related to advertisement space being purchased.* (Claims 1 and 7 of the '982 patent)

Therefore, the claimed system requires an "auction" and a competitive activity ***related to*** the product being purchased. In the Babe Ruth example, there was no auction since Ruth engaged with the owners of only ***one*** team, the New York Yankees. Plus, although flipping a coin can be characterized as competitive, the activity is not ***associated with*** the baseball contract. Unlike, for example, if Babe Ruth participated in a "home-run derby" and the terms of the contract were determined partly on the number of home runs hit by Babe Ruth during the derby.

An abstract idea is not patentable subject matter under Section 101, but the Supreme Court has long recognized that an "application" of an abstract idea "may well be deserving of patent protection." *Diamond v. Diehr*, 450 U.S. 175, 187 (1981); *see also Mackay Radio & Tel. Co. v. Radio Corp. of Am.*, 306 U.S. 86, 94 (1939) ("While a scientific truth, or the mathematical expression of it, is not a patentable invention, a novel and useful structure created with the aid of knowledge of scientific truth may be."). A claim satisfies Section 101 if it "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S. Ct. at 2357.

An invention is not rendered patent ineligible simply because it involves an abstract concept. *Diamond,* 450 U.S. at 187. The claim "must include additional features to ensure that the claim is more than a drafting effort designed to

monopolize the abstract idea." *Alice Corp.*, 134 S. Ct. at 2357 (quotation and alterations omitted). That means it must do "significantly more" than describe the abstract idea. *Id.* at 2359-60 (quotation omitted).

Priceplay.com's claims "transform the nature of the claim" into a patent-eligible application because, when the elements of the claims are considered "individually and 'as an ordered combination,'" they greatly narrow that concept by requiring that the ***result of an auction*** be combined with the ***"buyer's participation in an activity"*** to determine the sale price. This novel combination of a buyer's participation in both an auction ***and*** a "competitive" or "intermediary" activity is distinct from any of the systems for conducting e-commerce, *e.g.,* those described by inventor in the Background section of the '982 patent, among them Amazon.com, Priceline.com, VerticalNet.com, Onsale.com and eBay. It is also distinct from the e-commerce system described in *Asahi*, which was cited by Applicant in the '982 patent, *e.g.,* although *Asahi* describes a competitive activity, the e-commerce method does ***not*** include an auction component.

Also, "auctions" are mentioned in the '982 specification as only one of a series of possible features for the disclosed invention.

> *The present invention thus may be used independently of other business models, or in combination therewith, to form binding contracts. **For example, using the auction or reverse auction models, the buyer may be entitled to a further discount of the auction or reverse auction price**, which discount may be greater if the buyer performs well At the PDA, and not so great if the buyer performs poorly.*

(A17 - Column 4, line 64 – column 5, line 3; emphasis added).

In the case of the '982 patent, the claims recite the further feature that the buyer commits to buying the product *before* the price is determined from the competitive activity and the auction. Thus, the second limitation of claim 1 is the step of "***receiving data representing a binding commitment from the buyer*** via the global communication network to purchase a product for a price that will be partially based upon the buyer's participation in an auction and participation in a competitive activity that is in addition to placing bids in the auction and that is collateral to the price and associated with the product being purchased" (*see also* A21, independent claim 7).

Accordingly, the independent claims of the '982 and '917 patents narrow the "concept" of performance of a sales transaction over the Internet by requiring that the price to be paid by the buyer be determined by a combination of results from a ***competitive activity*** and ***an auction***. And in the case of the '982 patent, the independent claims are further narrowed by the requirement that the buyer commit to a price ***prior*** to starting the competitive activity. In the claimed system and process, the competitive activity must be (1) in addition to the auction, (2) ***collateral to the price***, and (3) ***associated with the product being purchased***. This combination of requirements significantly narrows the concept of the claimed competitive activity. Since the claimed competitive activity must be collateral to

21

the price and associated with the product being purchased, the multiple-database networked system is both integral and necessary in order for the claimed system to be functional (*e.g.,* the buyers participating in the claimed "competitive activity" or "intermediary activity" would also be limited), especially when introducing a second buyer and a second price to be calculated via the algorithm, as recited in claims 2-4 and 8-10 (and discussed further below).

The various dependent claims further narrow the scope of the claims. For instance, dependent claim 2 additionally requires "***at least two participants*** participating in the competitive activity and the auction" (emphasis added). Claim 3 recites the further step of "receiving data representing a ***second binding commitment from the second buyer*** to purchase the product for a second price; the second price will be at least partially based on the competitive activity and the auction" (emphasis added). And claim 6 of the '982 patent depends on claim 1 and requires the additional "step of accepting payment information from the buyer over the global communications network; and the payment information is accepted after receiving the data representing the ***binding commitment*** and before the price being paid" (emphasis added).

*Alice* requires that courts "determine whether [the claim] contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S. Ct. at 2357. Here, the claims, taken as a

whole, recite a specific way of promoting a transaction over the Internet that requires that the ***result of an auction*** be combined with the ***"buyer's participation in an activity"*** to determine the sale price, which constitutes an improvement over the many traditional prior art methods that allow "performance of a sales transaction over the Internet" that are not within the scope of the claims. Accordingly, the '982 and '917 patents transform the nature of the claims into a specific, practical application of the idea of "performing a sales transaction over the internet."

At the same time, the District Court ignores the combination of narrowing substantive claim limitations on the "fundamental concept" or "approach" of the '982 and '917 patents. These limitations of an auction, of binding the buyer to a purchase before the activity begins, and a global communications network integral to the claimed systems, processes, and methods, as well as the limitations of the dependent claims, considered both "individually and 'as an ordered combination,'" are narrowing substantive claim limitations that transform the nature of the claims into a patent-eligible application. To identify the subject matter of the independent claims of the '982 and '917 patents as "a fundamental concept" without considering these limitations, as the District Court has done, would rob those words of all meaning and eviscerate the second step of the framework set forth by the Supreme Court in *Mayo/Alice*.

The '982 and '917 patent claims go well beyond claiming a "fundamental concept" or "approach" by claiming a ***specific combination of elements***. Accordingly, those claims are not invalid because they would not "pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea," as required by *Alice* for a determination of ineligible subject matter. There is no risk that Priceplay.com's asserted claims, which cover a patent-eligible application of a "performance of a sales transaction over the Internet" concept to a new and useful end, would "disproportionately tie up" any fundamental concept – competitors remain free to pursue all manner of Internet sales strategies, including a great many involving competitive activities (*e.g.,* among them Amazon.com, Priceline.com, VerticalNet.com, Onsale.com, eBay, and the e-commerce method described in *Asahi*.)   Priceplay.com's claims, like all patent claims, merely preclude the specific combination of features recited therein.

## CONCLUSION & STATEMENT OF RELIEF SOUGHT

Appellant asks that this Court of Appeals reverse the adverse decision of the

U.S. District Court for the District of Delaware.

Dated:  June 18, 2015           Respectfully submitted,

                                /Scott M. Daniels/

                                _____
                                Scott M. Daniels, Esq.
                                Darrin A. Auito, Esq.
                                WESTERMAN HATTORI DANIELS & ADRIAN
                                1250 Connecticut Ave., NW.
                                Washington, D.C. 20036
                                (202) 822-1100(t)
                                (202) 822-1111(c)
                                *sdaniels@ whda.com*
                                *dauito@whda.com*

                                *Counsel for Appellant Priceplay.com, Inc.*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I, Scott M. Daniels, Esq., hereby certify that on June 18, 2015, I electronically filed the ***Brief of Appellant Priceplay.com, Inc.*** with the Clerk of Court using the CM/ECF System, which will send an electronic notice of such filing to the following registered CM/ECF users:

***Attorney for Appellee AOL Advertising, Inc.:***

| | |
|---|---|
| George Frank Pappas<br>Peter Andrew Swanson<br>Covington & Burling LLP<br>One City Center<br>850 Tenth Street NW<br>Washington DC 20001<br>(202) 622-5111 (t)<br>gpappas@cov.com<br>pswanson@cov.com | ☐ Via Hand-Delivery<br>☐ Via U.S. Mail<br>☐ Via Overnight Mail<br>☒ Via Electronic Docket Notification<br>☐ Via Facsimile<br>☐ Via Electronic Mail |

***Attorney for Appellee Facebook, Inc.:***

| | |
|---|---|
| Heidi Lyn Keefe<br>Lam K. Nguyen<br>Michael Graham Rhodes<br>Mark R. Weinstein<br>Cooley LLP<br>3175 Hanover Street<br>Palo Alto, California 94304-1130<br>(650) 843-5000 (t)<br>hkeefe@cooley.com<br>lnguyen@cooley.com<br>rhodesmg@cooley.com<br>mweinstein@cooley.com | ☐ Via Hand-Delivery<br>☐ Via U.S. Mail<br>☐ Via Overnight Mail<br>☒ Via Electronic Docket Notification<br>☐ Via Facsimile<br>☐ Via Electronic Mail |

*Attorney for Appellee Google , Inc.:*

| | |
|---|---|
| Daryl Joseffer<br>Adam Conrad<br>Paul Alessio Mezzina<br>King & Spalding LLP<br>1700 Pennsylvania Avenue NW<br>Suite 200<br>Washington, D.C. 20006<br>202 737 0500 (t)<br>djoseffer@kslaw.com<br>aconrad@kslaw.com<br>pmezzina@kslaw.com | ☐ Via Hand-Delivery<br>☐ Via U.S. Mail<br>☐ Via Overnight Mail<br>☒ Via Electronic Docket Notification<br>☐ Via Facsimile<br>☐ Via Electronic Mail |

Dated:  June 18, 2015

/s/ Scott M. Daniels, Esq.
Scott M. Daniels, Esq.
WESTERMAN, HATTORI, DANIELS &
ADRIAN, LLP
1250 Connecticut Avenue, N.W.,
Suite 700
Washington, D.C.
USA 20036
Telephone: 202-822-1100
Facsimile: 202-822-1111
*SDaniels@whda.com*

## **CERTIFICATE OF COMPLIANCE**

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e). The brief contains 5,617 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font in Times New Roman.

Dated:  June 18, 2015

/Scott M. Daniels/

_____

Scott M. Daniels, Esq.
Darrin A. Auito, Esq.
WESTERMANHATTORI DANIELS
& ADRIAN
1250 Connecticut Ave., NW.
Washington, D.C. 20036
(202) 822-1100(t)
(202) 822-1111(c)
*sdaniels@ whda.com*
*dauito@whda.com*
*Counsel for Appellant*
*Priceplay.com, Inc.*

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

Memorandum Opinion in the United States District Court for the District of Delaware, Civil Action No. 14-92-RGA, *Priceplay.com, Inc. v. AOL Advertising, Inc.* (March 18, 2015)..................................................................ADD 1

Order of Dismissal in the United States District Court for the Northern District of California, Civil Action No. 3:14-cv-04830-SI, *Priceplay.com, Inc. v. Facebook, Inc.* (April 20, 2015)..........................................................ADD 12

Order of Dismissal in the United States District Court for the Northern District of California, Civil Action No. 3:14-cv-04828-SI, *Priceplay.com, Inc. v. Google, Inc.* (May 5, 2015)................................................................ADD 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRICEPLAY.COM, INC.,

                  Plaintiff;

      v.

AOL ADVERTISING, INC.,

                  Defendant.

Civil Action No. 14-92-RGA

## MEMORANDUM OPINION

Richard D. Kirk, Esq., Stephen B. Brauerman, Esq., Vanessa R. Tiradentes, Esq., Sara E. Bussiere, Esq., BAYARD, P.A., Wilmington, DE; Scott M. Daniels, Esq. (argued), Darrin A. Auito, Esq., WESTERMAN HATTORI DANIELS & ADRIAN, Washington, DC.

Attorneys for Plaintiff Priceplay.com, Inc.

David E. Moore, Esq., Bindu A. Palapura, Esq., POTTER ANDERSON & CORROON LLP, Wilmington, DE; George F. Pappas, Esq., Thomas L. Cubbage, III, Esq., Peter A. Swanson, Esq. (argued), Sangjoon Han, Esq., COVINGTON & BURLING LLP, Washington, DC.

Attorneys for Defendant AOL Advertising, Inc.

March *18*, 2015

**ADD 1**

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is AOL's Motion to Dismiss for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6). (D.I. 27). The motion has been fully briefed (D.I. 28,

32 & 33), and oral argument was held on October 27, 2014. (D.I. 43).[1] Prior to oral argument,

the Court issued an oral order directing Priceplay to submit proposed claim constructions. (D.I.

35). Priceplay submitted its proposed claim constructions on October 17, 2014. (D.I. 38).

During oral argument, both parties agreed that Priceplay's proposed constructions did not affect

either party's arguments regarding the Motion to Dismiss. (D.I. 43 at 5:12–21). For the reasons

set forth herein, AOL's Motion to Dismiss is granted with regard to all of the claims in the '982

and '917 patents.

## I.    BACKGROUND

Priceplay filed the current action on January 22, 2014, alleging patent infringement of

U.S. Patent Nos. 8,050,982 ("the '982 patent") and 8,494,917 ("the '917 patent"). (D.I. 1).[2] The

abstract of the '982 patent describes the invention as: "[a] business process . . . for conducting

business transactions over the Internet, allowing buyers an opportunity to reduce the price of a

product/service based on the buyer's performance during a Price-Determining-Activity (PDA)."

(D.I. 1-1 at 2). The '982 specification provides that "[t]he present invention comprises a

business model used to determine the price of goods and/or services" (*Id.* at 6, 2:23–25) where:

> Sellers offer a product or service within a specified price range, and
> buyers enter into a contract to buy the product or service within that
> price range. The ultimate price (within the range) is determined

---

[1] Since oral argument, both parties have submitted Notices of Supplemental Authority. (D.I. 40–42, 44, 45, 47 & 48). With the exception of *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), the Court found most of this additional authority not entirely relevant or on-point.

[2] The application that resulted in the '917 patent is a divisional of the application that resulted in the '982 patent, and the respective specifications are substantially identical. For simplicity, I refer to the column and line numbers of the '982 specification, unless stated otherwise.

1

**ADD 2**

based upon the buyer's performance rating, or score, which the
buyer receives from participating in a collateral activity.

(*Id.* at 6, 2:28–33). The collateral activity "may be a video game (including audio/visual games),

electronic board game, crossword puzzle or other word game, sports bet, card game, or any other

activity or combination of activities . . . ." (*Id.* at 6, 2:36–39).

During oral argument, Priceplay informed the Court that it would focus its argument on

claim 1 of the '982 patent (D.I. 43 at 24:17–18), which it believes to be representative of the

asserted claims. (*Id.* at 24:7–9). I agree that claim 1 of the '982 patent is representative:

> A system comprising multiple databases accessible by at least one
> computer server, wherein the system is programmed to perform the
> steps of a sales transaction, the steps comprising:
>     communicating via the global communication network to a
> buyer;
>     receiving data representing a binding commitment from the
> buyer via the global communication network to purchase a product
> for a price that will be partially based upon the buyer's participation
> in an auction and participation in a competitive activity that is in
> addition to placing bids in the auction and that is collateral to the
> price and associated with the product being purchased;
>     wherein the competitive activity is required as part of the
> sales transaction; and
>     using an algorithm to calculate the price of the product based
> at least partially upon the results of the participation of the buyer in
> the competitive activity and at least partially based on results of the
> auction; wherein the price is at least partially dependent on the
> outcome of the competitive activity.

(D.I. 1-1 at 11, 11:2–22). The only other independent claim of the '982 patent is claim 7, which

is a process claim, and is almost identical to claim 1. (*Id.* at 11, 12:1–20). There are no material

differences between the process claims and the system claims in the '982 patent. During oral

argument, Priceplay conceded that its argument for the '917 patent is not as strong as that for the

'982 patent. (D.I. 43 at 34:9–10). Priceplay did not address the '917 claims during oral

2

**ADD 3**

argument, but advised the Court to apply the same analysis as for the '982 claims. (*Id.* at 34:7–13).

## II.  LEGAL STANDARD

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs are to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm" as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an

3

**ADD 4**

'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357 (internal quotation marks omitted). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610 (2010) (internal quotation marks omitted)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial*, 772 F.3d at 716.

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). "Claim construction is a question of law . . . ." *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007). At the motion to dismiss stage, any proposed claim constructions of the non-moving party should be accepted.

The Federal Circuit has held that it is not required for a district court to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted).

4

**ADD 5**

## III.   DISCUSSION

In applying the two-step framework outlined in *Alice*, it is clear that the claims of the '982 patent and '917 patent are drawn to patent-ineligible subject matter. The patents claim the abstract idea of "a sales transaction," which is a fundamental economic concept. While additional limitations narrow the scope of the claims, these limitations do not amount to an "inventive concept." Therefore, the '982 and '917 claims are invalid.

### A.   Abstract Idea

Under the two-step *Alice* framework, the Court must first determine whether the claims at issue are directed to a patent-ineligible concept. *Alice*, 134 S. Ct. at 2355. The parties appear to agree that a sales transaction forms the basis of the claimed system and process, and only disagree over what limitations should be included when describing that concept. AOL characterizes the fundamental concept of the claimed invention as "a sales transaction whereby the buyer has the opportunity to reduce the price of the product by participation in an additional activity." (D.I. 43 at 12:20–23). Priceplay, on the other hand, characterizes the fundamental concept as "performance of a sales transaction over the Internet." (D.I. 32 at 12). Consistent with both parties' proposals, the preamble for claim 1 of the '982 patent describes the invention as: "A system . . . programmed to perform the steps of a sales transaction." (D.I. 1-1 at 11, 11:2–3). Claim 7 of the '982 patent recites: "A process of performing a sales transaction." (*Id.* at 11, 12:1). While the claims provide additional limitations, it is clear that the '982 and '917 claims are directed to the abstract idea of a sales transaction.

Priceplay argues that the claimed invention cannot be directed to patent-ineligible subject matter when "hundreds of e-commerce models have been commercialized and developed" in recent years. (D.I. 32 at 13). For support, Priceplay relies on the following e-commerce models

5

**ADD 6**

described in the '982 specification: Amazon.com, Priceline.com, VerticalNet.com, Onsale.com, and eBay.com.[3]  (D.I. 1-1 at 6, 1:37–56).  Priceplay's reliance on these e-commerce models is unavailing, however, because even if some of these models are patented, the patents were granted prior to the Supreme Court's decision in *Alice*, and have not, to the Court's knowledge, been challenged for invalidity.  There are many products and services that are commercially available that are not directed to patent-eligible subject matter.  Therefore, the examples provided by Priceplay have little impact on the patentability of the claimed subject matter.

During oral argument, Priceplay conceded that, absent the additional limitations, the claimed invention is directed to an abstract idea.  (D.I. 43 at 32:16–20).  The Federal Circuit has made clear that "the addition of merely novel or non-routine components to the claimed idea" does not "necessarily turn[] an abstraction into something concrete."  *Ultramercial*, 772 F.3d at 715.  Further, "any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis."  *Id.*  Priceplay's proposed characterization of the claimed concept—"performance of a sales transaction over the Internet"—is an abstract idea.  Like "intermediated settlement" in *Alice* and "risk hedging" in *Bilski*, a sales transaction is a "fundamental economic practice long prevalent in our system of commerce."  *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611.  Performing a sales transaction over the Internet, or in conjunction with an auction and a competitive activity, does not make the concept any more "concrete."  Therefore, the patent claims are directed to patent-ineligible subject matter.

---

[3] The '982 specification only cites a patent number for the e-commerce model associated with Priceline.com.  I have no information regarding patents for the other models.

6

**ADD 7**

## B.     Inventive Concept

After determining that the claims are directed to an abstract idea, the Court must determine whether the claims contain an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357.  Priceplay argues that the independent claims of the '982 and '917 patent "greatly narrow [the abstract] concept by requiring that the result of an auction be combined with the 'buyer's participation in an activity' to determine the sale price." (D.I. 32 at 14).  Priceplay highlights that claim 1 of the '982 patent requires: (1) the buyer to commit to buying the product before determining the price through the competitive activity and auction; (2) the competitive activity to be "associated with the product being purchased"; and (3) the use of an algorithm to calculate price. (D.I. 1-1 at 11:2–22).  Priceplay argues that the "novel combination of a buyer's participation in both an auction and a 'competitive' or 'intermediary' activity is distinct from any of the systems for conducting e-commerce," and thus makes the subject matter patent-eligible. (D.I. 32 at 14). Novelty, however, is not the issue when determining whether a claimed invention is directed to patentable subject matter. *See Parker v. Flook*, 437 U.S. 584, 588 (1978).  Instead, the claims must provide "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355.

The addition of an auction and a competitive activity to a sales transaction is nothing more than the addition of "well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715.  Prior to *Alice*, the Federal Circuit has held that an invention claiming a method of conducting auctions for multiple items over a computer network was directed to patent-ineligible subject matter. *See In re Schrader*, 22 F.3d 290, 295 (Fed. Cir. 1994).  After *Alice*, the Federal

7

**ADD 8**

Circuit has held that patent claims directed to "managing a bingo game" consisted "solely of mental steps which can be carried out by a human using pen and paper," and thus were patent-ineligible. *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014).[4] The Northern District of California has also held that a patent claiming an invention "designed to facilitate e-commerce price selection and optimization" was patent-ineligible. *OIP Techs, Inc. v. Amazon.com, Inc.*, 2012 WL 3985118, at *12 (N.D. Cal. Sept. 11, 2012). Here, Priceplay's claimed invention merely combines the abstract ideas found to be patent-ineligible in *Schrader*, *Planet Bingo*, and *OIP*. The limitations in claim 1 of the '982 patent do not transform the abstract idea because they "simply instruct the practitioner to implement the abstract idea with routine, conventional activity." *Ultramercial*, 772 F.3d at 715. The elements of the claims "both individually and as an ordered combination" provide "routine additional steps," which do not transform the abstract idea into patent-eligible subject matter. *Id.* at 715–16.

The fact that the claims require the communication to be over the Internet does not save the claimed invention from invalidity. (D.I. 1-1 at 11, 11:6–7). The Supreme Court has made clear that "prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358. Contrary to Priceplay's assertion during oral argument (D.I. 43 at 40:11–19), the Internet is not essential to perform the claimed functions. Reliance on an intermediary activity to determine price has been a practice in sale negotiations throughout history, long before the existence of the Internet or computers. For example, using a coin flip to decide a contract term, where the parties agree beforehand that both will be bound by the result.[5] (D.I. 33 at 5). Similarly, by 1976,

---

[4] The Court understands this is not a precedential opinion.
[5] AOL provides the story of Babe Ruth's contract negotiations in 1922, where Ruth and the owners of the New York Yankees agreed to flip a coin to determine the terms of Ruth's new contract. (D.I. 33 at 10 n.4). If Ruth won he

litigants were entering into "high-low contracts," where the "defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of trial."[6] Further, the '982 specification makes clear that "[o]ff-line sweepstakes systems are also known, which allow a game player to win cash or other prizes or credits depending on the player's performance of a specified set of tasks," citing an example requiring a player to scratch off a covered area on a card to reveal a prize. (D.I. 1-1 at 6, 2:4–6). For each claim element in claim 1, "the function performed by the computer at each step of the process is '[p]urely conventional.'" *Alice*, 134 S. Ct. at 2359. Auctions, competitive activities, and sales transactions are all abstract ideas, and do not become non-abstract when combined and conducted over the Internet. The claim limitations do not "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *Id.* Priceplay concedes that the "computer features are not substantive narrowing limitations of the asserted claims under *Alice*, with respect to the § 101 patent eligibility issue." (D.I. 32 at 17). Thus, the claimed functions performed by the computer are "purely conventional," and merely "require a generic computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359.

Priceplay also argues that the dependent claims in the '982 patent transform the abstract idea into patentable subject matter. Dependent claim 2 requires "at least two participants participating in the competitive activity and the auction." (D.I. 1-1 at 11, 11:23–25). Dependent claim 3 requires "receiving data representing a second binding commitment from the second

---

would receive his preferred terms (including salary), but if the owners won they would receive their preferred terms. Ruth won the coin toss and received his preferred terms. AOL provides another example where a restaurant enters into a binding agreement with a patron that if the patron finishes a meal in an allotted time the patron receives the meal for free, but if the patron fails to finish the meal the patron must pay for the meal in full. (D.I. 43 at 9:22–10:1).

[6] J.J. Prescott et al., *Trial and Settlement: A Study of High-Low Agreements*, 57 J.L. & Econ. 699, 700 & n.3 (2014) ("High-low agreements allow both sides to hedge their bets and appear to have become increasingly popular over the last 30 years.").

buyer to purchase the product for a second price; the second price will be at least partially based on the competitive activity and the auction." (*Id.* at 11, 11:26–31). Dependent claim 6 requires "the step of accepting payment information from the buyer over the global communications network; and the payment information is accepted after receiving the data representing the binding commitment and before the price being paid." (*Id.* at 11, 11:39–43). These claims, however, "add nothing of practical significance to the underlying idea," and thus do not transform the sales transaction into patentable subject matter. *Ultramercial*, 772 F.3d at 716. In the present case, the specifications in the '982 and '917 patents are identical, and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348. Therefore, the independent and dependent claims of the '982 and '917 patents fail to provide an inventive concept, and thus are patent-ineligible.

## IV. CONCLUSION

For the reasons set forth above, AOL's Motion to Dismiss is granted with respect to all of the claims in the '982 and '917 patents. A separate Order consistent with this Memorandum Opinion will be issued.

10

HARRINGTON, FOXX, DUBROW
& CANTER, LLP
GREGORY J. SOWDER (196158)
Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone (415) 288-6600
Facsimile (415) 288-6618
Email: gjsowder@hfdclaw.com

WESTERMAN, HATTORI, DANIELS &
ADRIAN, LLP
SCOTT M. DANIELS
1250 Connecticut Avenue N.W., Suite 700
Washington, D.C. 20036-2657
Telephone (202) 822-1100
Facsimile (202) 822-1111
Email: sdaniels@whda.com

Attorneys for Plaintiff
PRICEPLAY.COM, INC.

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
LAM K. NGUYEN (265285)
(lnguyen@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRICEPLAY.COM, INC.,<br><br>          Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>          Defendant. | Case No.  3:14-cv-04830-SI<br><br>**STIPULATION AND [PROPOSED] ORDER OF DISMISSAL RE U.S. PATENT NOS. 8,050,982 AND 8,494,917** |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

STIPULATION AND [PROPOSED]
ORDER OF DISMISSAL
CASE NO. 3:14-CV-04830-SI

**ADD 12**

WHEREAS, Plaintiff Priceplay.com, Inc. ("Priceplay") filed an Amended Complaint on June 27, 2014 (ECF No. 6) alleging infringement of U.S. Patent No. 8,050,982, ("'982 Patent") and U.S. Patent No. 8,494,917 ("'917 Patent") (together "Patents-in-Suit");

WHEREAS, Defendant Facebook, Inc. ("Facebook") filed its Answer to the Amended Complaint on July 20, 2014 (ECF No. 9) asserting, *inter alia*, an affirmative defense that the Patents-in-Suit are invalid;

WHEREAS, on March 18, 2015, following briefing and oral argument, the Honorable Richard G. Andrews of the U.S. District Court for the District of Delaware in *Priceplay.com Inc. v. AOL Advertising, Inc.*, Case No. 1:14-cv-00092-RGA ("AOL Action") (ECF Nos. 49 & 50) issued an order finding all claims of the '982 patent and the '917 patent invalid under 35 U.S.C. § 101 as being directed toward patent-ineligible subject matter;

WHEREAS, Priceplay has filed a Notice of Appeal with the U.S. Court of Appeals for the Federal Circuit (ECF No. 52 in the AOL Action);

WHEREAS, in the interests of judicial economy and efficiency, and to avoid the need for multiple courts to decide overlapping legal and factual issues, the parties to the present action seek to enter a stipulated order of dismissal in accordance with Judge Andrews's order such that the present case and the AOL Action may be heard by the Federal Circuit at the same time;

NOW, THEREFORE, Priceplay and Facebook, by and through their respective counsel of record, hereby stipulate and respectfully request that the Court order the following:

1.    The Court hereby adopts Judge Andrews's order of March 18, 2015 granting AOL's Motion to Dismiss in *Priceplay.com Inc. v. AOL Advertising, Inc.*, Case No. 1:14-cv-00092-RGA, for purposes of entering a final and appealable dismissal. Based on Judge Andrews's order, all claims of the '982 and '917 patents are invalid under 35 U.S.C. § 101. All briefing and arguments relating to AOL's Motion to Dismiss in the AOL Action shall be deemed to be part of the record in the present action.

2.    Nothing in this stipulated dismissal order shall be construed as an admission by Priceplay as to the correctness of Judge Andrews's order in the AOL Action, or diminishing

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

**ADD 13**

STIPULATION AND [PROPOSED]
ORDER OF DISMISSAL
CASE NO. 3:14-CV-04830-SI

Priceplay's rights of appeal.

    3.      This order shall constitute a final and appealable order.

    4.      All other claims, defenses, or other matters that have been asserted are dismissed without prejudice.

    IT IS SO STIPULATED.

Dated: April _15, 2015

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

/s/ *Scott M. Daniels*
Scott M. Daniels
Attorneys for Plaintiff
PRICEPLAY.COM, INC.

COOLEY LLP

/s/ *Heidi L. Keefe*
Heidi L. Keefe
Attorneys for Defendant
FACEBOOK, INC.

    IT IS SO ORDERED.

Dated: 4/20/15

United States District Judge

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

ADD 14

STIPULATION AND [PROPOSED]
ORDER OF DISMISSAL
3:14-CV-04830-SI

1

## FILER'S ATTESTATION

2

Pursuant to Civil Local Rule 5.1(i)(3), the undersigned attests that all parties have

3

concurred in the filing of this STIPULATION AND [PROPOSED] OF DISMISSAL RE U.S. PATENT NOS.

4

8,050,982 AND 8,494,917.

5

6

DATED:        April 15, 2015                    COOLEY LLP

7

8

9                                    By:   /s/ Heidi L. Keefe
                                          Heidi L. Keefe

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

**ADD 15**

STIPULATION AND [PROPOSED]
ORDER OF DISMISSAL
3:14-CV-04830-SI

**DISCUSSION PURPOSES ONLY**

HARRINGTON, FOXX, DUBROW & CANTER, LLP
GREGORY J. SOWDER (196158)
Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone (415) 288-6600
Facsimile (415) 288-6618
Email: gjsowder@hfdclaw.com

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP
SCOTT M. DANIELS
1250 Connecticut Avenue N.W., Suite 700
Washington, D.C. 20036-2657
Telephone (202) 822-1100
Facsimile (202) 822-1111
Email: sdaniels@whda.com

Attorneys for Plaintiff
PRICEPLAY.COM, INC.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
DAVID A. PERLSON (209502)
davidperlson@quinnemanuel.com
MICHELLE A. CLARK (243777)
michelleclark@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

ROBERT B. WILSON
robertwilson@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7000

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRICEPLAY.COM, INC., | Case No.   3:14-cv-04828-SI |
| Plaintiff, | Stipulation and [~~Proposed~~] Order of Dismissal re U.S. Patent Nos. 8,050,982 and 8,494,917 |
| v. | |
| GOOGLE, INC., | |
| Defendant. | |

WHEREAS, Plaintiff Priceplay.com, Inc. ("Priceplay") filed an Amended Complaint on June 27, 2014 (ECF No. 10) alleging infringement of U.S. Patent No. 8,050,982, ("'982 Patent") and U.S. Patent No. 8,494,917 ("'917 Patent") (together "Patents-in-Suit");

WHEREAS, Defendant Google Inc. ("Google") filed its Answer to the Amended Complaint on July 29, 2014 (ECF No. 24) asserting, *inter alia*, an affirmative defense that the Patents-in-Suit are invalid;

WHEREAS, on March 18, 2015, following briefing and oral argument, the Honorable Richard G. Andrews of the U.S. District Court for the District of Delaware in *Priceplay.com Inc. v. AOL Advertising, Inc.*, Case No. 1:14-cv-00092-RGA ("AOL Action") (ECF Nos. 49 & 50) issued an order finding all claims of the '982 patent and the '917 patent invalid under 35 U.S.C. § 101 as being directed toward patent-ineligible subject matter;

WHEREAS, Priceplay has filed a Notice of Appeal with the U.S. Court of Appeals for the Federal Circuit (ECF No. 52 in the AOL Action);

WHEREAS, in the interests of judicial economy and efficiency, and to avoid the need for multiple courts to decide overlapping legal and factual issues, the parties to the present action seek to enter a stipulated order of dismissal and final judgment regarding all claims asserted by PricePlay in accordance with Judge Andrews's order such that the present case and the AOL Action may be heard by the Federal Circuit at the same time;

NOW, THEREFORE, Priceplay and Google, by and through their respective counsel of record, hereby stipulate and respectfully request that the Court order the following:

1. The Court hereby adopts Judge Andrews's order of March 18, 2015 granting AOL's Motion to Dismiss in *Priceplay.com Inc. v. AOL Advertising, Inc.*, Case No. 1:14-cv-00092-RGA, for purposes of entering a final and appealable dismissal and judgment. Based on Judge Andrews's order, all claims of the '982 and '917 patents are invalid under 35 U.S.C. § 101. All briefing and arguments relating to AOL's Motion to Dismiss in the AOL Action shall be deemed to be part of the record in the present action.

2. Nothing in this stipulated dismissal order shall be construed as an admission by Priceplay as to the correctness of Judge Andrews's order in the AOL Action, or diminishing Priceplay's rights of appeal.

3. All claims by Priceplay against Google in this action are dismissed.

4. This order shall constitute a final and appealable order.

IT IS SO STIPULATED.

Dated: April 30, 2015

HARRINGTON, FOXX, DUBROW & CANTER, LLP

/s/
Gregory J. Sower
Attorneys for Plaintiff
PRICEPLAY.COM, INC.

QUINN EMANUEL URQUHART & SULLIVAN LLP

/s/
Michelle A. Clark
Attorneys for Defendant
Google INC.

IT IS SO ORDERED.

Dated:_____ 5/1/15

United States District Judge

01980.00029/6675803.1

3

Stipulation and [Proposed]
Order of Dismissal
3:14-cv-04830-SI

**ADD 18**