Nos. 15-1492, 15-1589, and 15-1660 (cons.)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

PRICEPLAY.COM, INC.,

*Plaintiff-Appellant,*

v.

AOL ADVERTISING, INC., FACEBOOK INC., and GOOGLE INC.,

*Defendants-Appellees.*

On appeal from the United States District Court for the District of Delaware in No. 1:14-cv-92-RGA, Judge Richard G. Andrews, and from the United States District Court for the Northern District of California in Nos. 3:14-cv-4828-SI and -4830-SI, Judge Susan Y. Illston

## BRIEF OF APPELLEES

George F. Pappas
  *Counsel of Record*
Peter A. Swanson
COVINGTON &
  BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000

*Counsel for
Appellee AOL
Advertising, Inc.*

Heidi L. Keefe
  *Counsel of Record*
Mark R. Weinstein
Lam K. Nguyen
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Tel.: (650) 843-5000

Michael G. Rhodes
COOLEY LLP
101 California Street
5th Floor
San Francisco, CA 94111

*Counsel for
Appellee Facebook Inc.*

Daryl L. Joseffer
  *Counsel of Record*
Paul Alessio Mezzina
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
Tel.: (202) 737-0500

Adam M. Conrad
KING & SPALDING LLP
100 N. Tryon Street,
  Ste. 3900
Charlotte, NC 28202

*Counsel for
Appellee Google Inc.*

August 31, 2015

## <u>CERTIFICATE OF INTEREST FOR AOL ADVERTISING, INC.</u>

Counsel for Appellee AOL Advertising, Inc., certifies the following:

1.     The full name of the party represented by me is AOL Advertising, Inc.

2.     The name of the real party in interest represented by me is AOL Advertising, Inc.

3.     AOL Advertising, Inc., is a wholly owned subsidiary of AOL Inc., which is a wholly owned subsidiary of Verizon Communications Inc., a publicly traded company (NYSE "VZ"). No publicly held company owns 10% or more of the stock of Verizon Communications Inc.

4.     The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court are:

Covington & Burling LLP: George F. Pappas; Thomas L. Cubbage, III; Peter A. Swanson; Sangjoon Han

Potter Anderson & Corroon, LLP: Richard L. Horwitz; David E. Moore

This 31st day of August 2015.     /s/ Peter A. Swanson*
                                       Peter A. Swanson

*with permission

## **CERTIFICATE OF INTEREST FOR FACEBOOK INC.**

Counsel for Appellee Facebook Inc. certifies the following:

1.    The full name of the party represented by me is Facebook Inc.

2.    The name of the real party in interest represented by me is Facebook Inc.

3.    Facebook Inc. is a publicly traded company (NASDAQ "FB") and no publicly held companies own 10% or more of Facebook Inc.'s stock.

4.    The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court are:

Cooley LLP:    Heidi L. Keefe; Michael G. Rhodes; Mark R. Weinstein; Lam K. Nguyen; Sarah B. Whitney

Blank Rome LLP: Steven L. Caponi

This 31st day of August 2015.        /s/ Heidi L. Keefe*
                                           Heidi L. Keefe

*with permission

# <u>CERTIFICATE OF INTEREST FOR GOOGLE INC.</u>

Counsel for Appellee Google Inc. certifies the following:

1. The full name of the party represented by me is Google Inc.

2. The name of the real party in interest represented by me is Google Inc.

3. Google Inc. is a publicly traded company (NASDAQ "GOOG" and "GOOGL") and no publicly held companies own 10% or more of Google Inc.'s stock.

4. The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court are:

King & Spalding LLP:  Daryl L. Joseffer; Adam M. Conrad; Paul Alessio Mezzina

Potter Anderson & Corroon, LLP: Richard L. Horwitz; David E. Moore; Erich W. Struble

Quinn Emanuel Urquhart & Sullivan, LLP: Michelle A. Clark; David A. Perlson; Antonio M. Sistos; Robert B. Wilson

Wilson Sonsini Goodrich & Rosati, P.C.: Robin L. Brewer; Jennifer J. Schmidt; Stefani E. Shanberg

This 31st day of August 2015.    /s/ Daryl L. Joseffer

Daryl L. Joseffer

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................ii

STATEMENT OF RELATED CASES ........................................................1

JURISDICTIONAL STATEMENT ...........................................................1

INTRODUCTION ..................................................................................2

STATEMENT OF THE ISSUE ................................................................3

STATEMENT OF THE CASE .................................................................3

    A.    The Patents in Suit ................................................................3

    B.    Procedural History .................................................................6

SUMMARY OF ARGUMENT ...............................................................10

ARGUMENT .......................................................................................13

I.    The Claims Are Directed to an Abstract Idea. ..............................13

II.    The Claims Do Not Contain an Inventive Concept. ......................18

    A.    The Claims Recite a Business Method with No Technological Advancement. ................................................18

    B.    The Patents' Combination of Abstract Economic Concepts Is Not Inventive......................................................21

    C.    Section 101 Requires Inventiveness, Not Multiplicity of Claim Limitations. ...............................................................27

    D.    Priceplay's Preemption Arguments Cannot Save Its Claims...............................................................................29

CONCLUSION ....................................................................................31

# TABLE OF AUTHORITIES

## Cases

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ........................................................ 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ........................................................... passim

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015) ........................................................ 30

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
    133 S. Ct. 2107 (2013) ...................................................................... 26

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ........................................................ 14

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ............................................................... passim

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ............................................... passim

*Cogent Med., Inc. v. Elsevier Inc.*,
    70 F. Supp. 3d 1058 (N.D. Cal. 2014) ............................................. 25

*Content Extraction & Transmission LLC v.*
*Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) .......................................... 14, 26, 29

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ........................................................ 15

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) .................................................. 20, 29

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012) ........................................................ 14

*Ex Parte Priceplay, Inc.*,
    No. 11-13687, 2012 WL 3679743 (B.P.A.I. Aug. 24, 2012),
    *aff'd*, 534 F. App'x 980 (Fed. Cir. 2013) (per curiam) (non-
    precedential) ................................................................................. 7, 27

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) ....................................................... 15

*In re Schrader*,
    22 F.3d 290 (Fed. Cir. 1994) ........................................................... 24

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ................................................. passim

*Kroy IP Holdings v. Safeway, Inc.*,
    No. 2:12-cv-900-WCB, 2015 WL 3452469
    (E.D. Tex. May 29, 2015),
    *appeal docketed*, No. 15-1782 (Fed. Cir. July 1, 2015) ............... 15, 31

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014) ........................................... 15, 29

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ....................................................... 22, 25, 28

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ................................................. passim

*Parker v. Flook*,
    437 U.S. 584 (1978) ......................................................................... 26

*Performance Pricing, Inc. v. Google Inc.*,
    704 F. Supp. 2d 577 (E.D. Tex. 2010) (Rader, C.J.),
    *aff'd sub nom. Priceplay, Inc. v. Google, Inc.*,
    410 F. App'x 325 (Fed. Cir. 2011) (per curiam) (non-precedential) ... 6

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ................................................... passim

*Versata Dev. Grp. v. SAP Am., Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015),
    *petition for reh'g en banc filed* (Aug. 24, 2015) ............... 14, 18, 20, 21

**Statutes**

28 U.S.C. § 1295 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. § 1338 ................................................................................. 1

35 U.S.C. § 101 .............................................................................. 2, 3

## STATEMENT OF RELATED CASES

These cases have not previously come before this or any other appellate court. The patents at issue here are involved in a suit pending in the Northern District of California, *Priceplay.com, Inc. v. LinkedIn Corp.*, No. 4:14-cv-4824-SI, and in two covered business method review proceedings pending before the U.S. Patent and Trademark Office ("PTO"), Nos. CBM2015-00024 and -00025 (instituted May 18, 2015). Counsel are not aware of any other case that will be directly affected by the decision in this appeal.

## JURISDICTIONAL STATEMENT

The district courts had jurisdiction over these cases under 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction under 28 U.S.C. § 1295.

The U.S. District Court for the District of Delaware entered final judgment in *Priceplay.com, Inc. v. AOL Advertising, Inc.*, No. 1:14-cv-92-RGA, on March 18, 2015. Priceplay filed a notice of appeal from that judgment on March 25, 2015.

The U.S. District Court for the Northern District of California entered final judgment in *Priceplay.com, Inc. v. Facebook Inc.*, No. 3:14-

cv-4830-SI, on April 20, 2015.  Priceplay filed a notice of appeal from that judgment on April 24, 2015.

The U.S. District Court for the Northern District of California entered final judgment in *Priceplay.com, Inc. v. Google Inc.*, No. 3:14-cv-4828-SI, on May 5, 2015.  Priceplay filed a notice of appeal from that judgment on May 11, 2015.

## INTRODUCTION

The claimed business method involves setting a price in an Internet sales transaction based in part on the buyer's performance in a "competitive" or "intermediary" activity, such as a game.  Setting prices in that manner is a longstanding practice that predates the Internet. The Delaware district court held that the claims are "clear[ly]" ineligible for patenting under 35 U.S.C. § 101 because: (i) they are directed to an abstract idea; and (ii) they recite nothing inventive.  A6.

Priceplay concedes that the claims disclose no technological innovation.  Instead, they merely recite the performance of a business method over the Internet through the use of conventional computer equipment.  This Court and the Supreme Court have repeatedly held

that such claims are ineligible for patenting, and the same result should apply here.

## STATEMENT OF THE ISSUE

Whether the asserted patent claims are eligible for patenting under 35 U.S.C. § 101.

## STATEMENT OF THE CASE

Appellees operate some of the Internet's top destinations and provide a host of online resources. Priceplay purports to own several patents, and litigation related to those patents appears to be its primary business.

### A.    The Patents in Suit

Priceplay is the purported assignee of U.S. Patents No. 8,050,982 ("the '982 patent") and No. 8,494,917 ("the '917 patent"). The application that resulted in the '917 patent is a division of the application that resulted in the '982 patent, and the patents' specifications are substantially identical. A2 n.2.

The '982 patent describes the claimed invention as a "business process . . . for conducting business transactions over the Internet, allowing buyers an opportunity to reduce the price of a product/service based on the buyer's performance during a Price-Determining-Activity."

A12. The specification further explains that the "invention comprises a business model used to determine the price of goods and/or services," wherein "[s]ellers offer a product or service within a specified price range, and buyers enter into a contract to buy the product or service within that price range." A16, at 2:23–24, 28–30. "The ultimate price (within the range) is determined based upon the buyer's performance rating, or score, which the buyer receives from participating in a collateral activity." *Id.* at 2:31–33. That activity "may be a video game (including audio/visual games), electronic board game, crossword puzzle or other word game, sports bet, card game, or any other activity or combination of activities." *Id.* at 2:36–39.

Claim 1 of the '982 patent is illustrative. It recites:

A system comprising multiple databases accessible by at least one computer server, wherein the system is programmed to perform the steps of a sales transaction, the steps comprising:

communicating via the global communication network to the buyer;

receiving data representing a binding commitment from the buyer via the global communication network to purchase a product for a price that will be partially based upon the buyer's participation in an auction and participation in a competitive activity that is in addition to placing bids in the auction and that is collateral to the price and associated with the product being purchased;

> wherein the competitive activity is required as part of the sales transaction; and
>
> using an algorithm to calculate the price of the product based at least partially upon the results of the participation of the buyer in the competitive activity and at least partially based on results of the auction; wherein the price is at least partially dependent on the outcome of the competitive activity.

A21, at 11:2–22. The '982 patent's other independent claim covers a "process of performing a sales transaction comprising" the same steps identified in claim 1. *Id.* at 12:1–20; *see* A3 ("There are no material differences between the process claims and the system claims in the '982 patent."). The dependent claims add a few additional limitations, such as involving more than one buyer in an activity, accepting payment information over the Internet, and "paying a fee for selling the product based on the revenue of the sales transaction." A21, at 11:23–43, 12:21–41.

Although the claims in the '982 patent require that the price be partially determined based on an auction, the patent does not identify or purport to solve any problems unique to the auction setting. Rather, as Priceplay admits, "'auctions' are mentioned in the '982 specification as only one of a series of possible features for the disclosed invention." Br. 20; *see also* A17, at 4:60–64 (stating that products or services can be

sold as "common offerings always available, auction items . . ., reverse auction items . . ., specially-ordered lists of items . . . or any other way"). The specification also acknowledges that online auctions existed in the prior art. *See* A16, at 1:50–52 (discussing eBay.com and Onsale.com).

Like the '982 patent, the '917 patent includes system and method claims directed to setting a price in an Internet sales transaction based in part on the buyer's performance in an "intermediary activity." A31, at 11:8–17. Before the district court, Priceplay conceded that if the '982 patent is invalid, the '917 patent is as well. A3–4.

## B.    Procedural History

In 2007, Priceplay's predecessor-in-interest sued Google Inc. and AOL LLC, among other defendants, alleging that their systems for selling online advertising infringed U.S. Patent No. 6,978,253 ("the '253 patent"). The '253 patent is a parent of the '982 and '917 patents. The district court in that case entered summary judgment of noninfringement, and this Court summarily affirmed. *Performance Pricing, Inc. v. Google Inc.*, 704 F. Supp. 2d 577 (E.D. Tex. 2010) (Rader, C.J.), *aff'd sub nom. Priceplay, Inc. v. Google, Inc.*, 410 F. App'x 325 (Fed. Cir. 2011) (per curiam) (non-precedential). The PTO subsequently

determined that several claims of the '253 patent are invalid over the prior art, and this Court summarily affirmed that determination as well. *Ex Parte Priceplay, Inc.*, No. 11-13687, 2012 WL 3679743 (B.P.A.I. Aug. 24, 2012), *aff'd*, 534 F. App'x 980 (Fed. Cir. 2013) (per curiam) (non-precedential).

In 2014, Priceplay sued Appellees AOL Advertising, Facebook, and Google in the U.S. District Court for the District of Delaware. Priceplay alleged that Appellees infringed the '982 and '917 patents by "selling ad space to e-commerce merchants via a system and a method which combine an interactive competitive activity and interactive bidding." A69; *see also* A317; A336. The suits against Facebook and Google were transferred to the U.S. District Court for the Northern District of California, while the suit against AOL Advertising remained in Delaware.

On March 18, 2015, the Delaware district court granted AOL Advertising's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The court held that the claims of the '982 and '917 patents are directed to an abstract idea, fail to provide an inventive concept, and are therefore patent-ineligible. A11. As the court

explained, "[a]uctions, competitive activities, and sales transactions are all abstract ideas, and do not become non-abstract when combined and conducted over the Internet." A10.

The district court reasoned that "[r]eliance on an intermediary activity to determine price has been a practice in sale negotiations throughout history." A9. It gave several examples of that practice: parties "using a coin flip to decide a contract term," as Babe Ruth and the New York Yankees famously did in 1922; a restaurant offering patrons free or discounted meals if they finish within an allotted time; and litigants entering into "high-low" agreements where the amount the defendant will ultimately pay the plaintiff is determined within a fixed range based on the outcome of a trial. A9–10 & nn.5–6. The claims, the court held, add nothing to that basic economic practice other than "'well-understood, routine, conventional activity.'" A8 (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–16 (Fed. Cir. 2014)).

The district court further held that the claims cannot escape invalidity simply by requiring that the transaction be conducted over the Internet. Observing that "the Internet is not essential" to the claimed business method, the court recognized that the prohibition

against patenting abstract ideas "'cannot be circumvented by'" limiting the use of an idea "'to a particular technological environment.'" A9 (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014)). Finally, the court held that additional limitations in the dependent claims add "'nothing of practical significance to the underlying idea,'" and thus do not provide an "inventive concept" sufficient to transform the abstract idea into patentable subject matter. A11 (quoting *Ultramercial*, 772 F.3d at 716).

Priceplay stipulated to the adoption of the Delaware court's ruling by the district court in California and to the resultant dismissal of Priceplay's suits against Facebook and Google. A301; A321. Priceplay appealed all three dismissals, and this Court consolidated the appeals.

## SUMMARY OF ARGUMENT

**I.** The asserted patent claims are directed to the abstract concept of setting a price based on the buyer's performance in an activity. That concept is not meaningfully different from many "'fundamental economic concepts'" and "methods of organizing human activity" that this Court and the Supreme Court have held to be abstract. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367–68 (Fed. Cir. 2015).

Indeed, Priceplay concedes that its claims are drawn to an abstract idea. Priceplay's formulation of the abstract idea as a "sales transaction," however, describes the idea at a higher level of generality than this Court's precedents require and does not fully describe the patents' underlying concept. But no matter how one characterizes the abstract idea, the asserted claims contain no inventive concept, and thus are not patent-eligible.

**II.** The claims merely recite the performance of a business method over the Internet through the use of generic computer

equipment. They do not disclose any technological advancement—a point Priceplay concedes.

Priceplay asserts that the claims' inventive aspect lies in their "combination" of several business concepts, each of which is an abstract idea: (1) an auction, (2) a competitive activity, (3) an association between the activity and the product, and (4) a buyer's commitment to purchase before the price is set. The prohibition on patenting abstract ideas is not circumvented merely by stacking one abstract concept upon another, and there is nothing inventive about the claimed combination.

The district court gave multiple examples of conventional business practices that feature all of these elements except an auction. An "abstract idea does not become nonabstract by limiting the invention to a particular field of use," such as an auction setting. *Intellectual Ventures*, 792 F.3d at 1366. The patents themselves confirm that there is nothing special about joining a competitive activity with an auction, as opposed to with "any other way" of selling goods or services. A17, at 4:60–64. Indeed, Priceplay concedes that an auction is "only one of a series of possible features for the disclosed invention." Br. 20.

Priceplay argues that the claimed combination is "narrow."  Br. 17.  But an abstract idea cannot be patented "even if the particular . . . abstract idea at issue is narrow."  *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014).  An inventive aspect is required, and there is none here.

## ARGUMENT

This case does "not push or even test the boundaries of" this Court's patent-eligibility jurisprudence. *buySAFE*, 765 F.3d at 1354–55. To determine whether a patent claims ineligible subject matter, a court asks two questions. Are the claims directed to an abstract idea? *Alice*, 134 S. Ct. at 2355. If so, do the claims contain an inventive concept sufficient to transform the idea into a patentable invention? *Id.* at 2357.

Priceplay concedes that the asserted claims are directed to an abstract idea. Br. 9. And far from containing an inventive concept, the claims merely recite a business method implemented over the Internet using conventional computer equipment—precisely what this Court and the Supreme Court have repeatedly held to be ineligible for patenting.

## I.    The Claims Are Directed to an Abstract Idea.

The patents describe the invention as "[s]ystems and methods . . . to allow a potential buyer to engage in competitive/entertaining activities wherein the activities ultimately determine the price of the product or service." A16, at 2:12–15. Priceplay concedes that these patents are drawn to a "'business process'" wherein buyers have an "'opportunity to reduce the price of a product/service based on the

buyer's performance during a Price-Determining Activity.'" Br. 5 (quoting A12)); *see also* A352:17–19 ("The basic claims of the invention here is [sic] a way to promote the sales of a product . . . .").

Setting a price based on the buyer's performance in an activity is an unpatentable abstract idea. Claims directed to the "mere formation and manipulation of economic relations" and the "performance of certain financial transactions" typically involve abstract ideas. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). This Court and the Supreme Court have held so on more than a dozen occasions.[1] And that is exactly what these claims are directed to.

---

[1] *See, e.g.*, *Alice*, 134 S. Ct. at 2357 (intermediated settlement); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (risk hedging); *Versata Dev. Grp. v. SAP Am., Inc.*, 793 F.3d 1306, 1333–34 (Fed. Cir. 2015) (using organizational and group hierarchies to determine a price), *petition for reh'g en banc filed* (Aug. 24, 2015); *Intellectual Ventures*, 792 F.3d at 1367–68 (budgeting); *OIP Techs.*, 788 F.3d at 1362 (offer-based price optimization); *Ultramercial*, 772 F.3d at 715 (advertising as currency); *buySAFE*, 765 F.3d at 1355 (transaction performance guarantee); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338 (Fed. Cir. 2013) (insurance claims processing); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (managing a life insurance policy); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (processing loan information through a clearinghouse); *Fort Props., Inc. v. Am. Master*

Indeed, this Court recently held that "the concept of offer-based price optimization"—that is, setting a price for a product by testing customer reactions to several different prices—is of a piece with the many "fundamental economic concepts" that this Court and the Supreme Court have held to be abstract. *OIP Techs.*, 788 F.3d at 1362. Like the claims invalidated in *OIP Technologies*, the claims at issue here relate to a "method of price optimization in an e-commerce environment." *Id.* at 1360. Setting prices based on customer performance in an activity is no less abstract than setting prices based on customer reactions to an offer.

Setting an activity-based price is also a "longstanding commercial practice." *Alice*, 134 S. Ct. at 2356. The district court gave several examples of conventional practices that embody that concept: "using a coin flip to decide a contract term," offering free or discounted meals to

---

*Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012) (structuring real-estate investments to reduce taxes); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (detecting credit-card fraud based on information about past transactions). *See also Kroy IP Holdings v. Safeway, Inc.*, No. 2:12-cv-900-WCB, 2015 WL 3452469, at *12 (E.D. Tex. May 29, 2015) (Bryson, J.) (using incentive programs in marketing), *appeal docketed*, No. 15-1782 (Fed. Cir. July 1, 2015); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 837 (E.D. Tex. 2014) (Bryson, J.) (currency exchange).

patrons who finish within an allotted time, and "high-low" agreements that set a fixed range for damages based on the outcome of a trial. A9–10 & nn.5–6. This provides further confirmation that the patents claim an abstract idea. *See Alice*, 134 S. Ct. at 2356.

Significantly, Priceplay concedes that its claims are directed toward an abstract idea, though it disputes how to describe that idea. Whereas Appellees define the abstract idea as setting a price based in part on a buyer's participation in an activity, Priceplay frames the idea as "a sales transaction." Br. 15.

Priceplay's formulation of the abstract idea is too broad in light of the patent's description of the alleged invention. Priceplay's patents are drawn to the idea of setting the price in a sales transaction based on the buyer's performance in a competitive activity. Priceplay's effort to define the idea at a higher level of generality is at odds with the patents' own description of the "present invention" as the use of "various forms of competition and/or entertainment . . . to determine transaction prices between buyers and sellers." A26, at 1:17–22.

Moreover, neither this Court nor the Supreme Court has described abstract ideas at the extraordinarily high level of generality of a "sales

transaction," as Priceplay proposes here. In *Alice*, a "method of exchanging financial obligations between two parties using a third-party intermediary" was "drawn to the concept of intermediated settlement," not the concept of a financial transaction. 134 S. Ct. at 2356. In *OIP Technologies*, a "method of pricing a product for sale" was drawn, not to the bare idea of a sales transaction, but to the more specific "concept of offer-based price optimization." 788 F.3d at 1362.

While the district court accepted Priceplay's concession that its patents are directed to the abstract idea of "'performance of a sales transaction over the Internet,'" A7, the court did not hold that a "sales transaction" is the only relevant abstraction. Instead, it held that "[a]uctions, competitive activities, and sales transactions are *all* abstract ideas." A10 (emphasis added).

In the end, the differences between Priceplay's and Appellees' characterization of the abstract idea are of no moment. Priceplay concedes that the first step of the *Alice*/*Mayo* framework is satisfied, and as explained below, the asserted claims provide no inventive concept no matter how the abstract idea is characterized.

## II.    The Claims Do Not Contain an Inventive Concept.

Because the asserted patent claims are directed to an abstract idea, the claims are invalid unless they contain an inventive concept sufficient to transform the idea into a concrete, patent-eligible invention. They do not.

### A.    The Claims Recite a Business Method with No Technological Advancement.

To begin, the purported invention is a business method. *See* pp. 13–14, *supra*. Business methods raise particular concerns under § 101. Although the Patent Act "appears to leave open the possibility" of some business method patents, it "does not suggest broad patentability" for business methods. *Bilski v. Kappos*, 561 U.S. 593, 608 (2010). Such patents would pose a particularly serious risk of "put[ting] a chill on creative endeavor and dynamic change." *Id.* (plurality op.); *see also Versata Dev. Grp. v. SAP Am., Inc.*, 793 F.3d 1306, 1334 (Fed. Cir. 2015) (invalidating "claims reciting a commonplace business method aimed at processing business information . . . on a general purpose computer"), *petition for reh'g en banc filed* (Aug. 24, 2015).

In addition, the claims merely recite implementing the business method with conventional computer equipment and the Internet—

without disclosing any technological advancement. *See, e.g.*, A21, at 11:2–7 (describing the use of generic computers, servers, databases, and a "global communication network"). In the district court, Priceplay conceded that the claims' "computer features" could not save them from abstractness. A10. Priceplay's brief in this Court likewise relies solely on the business method, not the technological implementation of that method. *See, e.g.*, Br. 17, 20. This is consistent with the patents' own characterization of the purported invention as a "business model" rather than any technological advance. A16, at 2:23; *see also, e.g.*, *id.* at 2:12–15 (describing the invention as "[s]ystems and methods . . . to allow a potential buyer to engage in competitive/entertaining activities wherein the activities ultimately determine the price of the product or service").

The Supreme Court and this Court have consistently invalidated claims, like these, that merely recite performing a business method with conventional computer equipment. *See, e.g.*, *Alice*, 134 S. Ct. at 2358–60; *Intellectual Ventures*, 792 F.3d at 1368; *OIP Techs.*, 788 F.3d at 1363; *Ultramercial*, 772 F.3d at 716–17; *buySAFE*, 765 F.3d at 1355. The claims in this case and *OIP Technologies* are especially analogous,

as they involve methods of setting prices for e-commerce transactions. 788 F.3d at 1363. But Priceplay does not cite this Court's decision invalidating the claims in that case, much less attempt to distinguish it.

Priceplay's reliance on *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), only highlights the infirmity of its position. That case holds that claims addressing an "Internet-centric" problem with a "solution . . . rooted in computer technology" may be patent-eligible. *Id.* at 1257–58.

As noted above, Priceplay concedes there is no such technological innovation here. *See* A10. And rightly so: setting a price based on a buyer's participation in an activity is a basic economic concept practiced long before the Internet existed. *See* p. 8, *supra*. Far from being "necessarily rooted in computer technology," it can be implemented "via pen and paper or in a person's mind." *Versata*, 793 F.3d at 1333, 1335. Implementing that concept with "functional and generic" computer hardware does not make it patent-eligible. *Alice*, 134 S. Ct. at 2360; *see also Versata*, 793 F.3d at 1333 (explaining that the claims in *DDR Holdings* provided a "solution that was necessarily rooted in computer technology to overcome a problem specifically arising in the realm of

20

computer networks"); *Intellectual Ventures*, 792 F.3d at 1371 ("The patent claims here do not address problems unique to the Internet, so *DDR* has no applicability.").

## B. The Patents' Combination of Abstract Economic Concepts Is Not Inventive.

Priceplay relies on the patent claims' "combination" of non-technological elements. Br. 11. But Priceplay admits, as it must, that none of those elements is individually an inventive concept. *See id.* ("None of these claimed elements is special in itself."); *id.* at 15 & n.2 (not disputing the district court's conclusion that several of the elements are individually patent-ineligible).

One of the elements on which Priceplay relies—a competitive activity—is best understood as part of the abstract idea to which the claims are drawn. *See* pp. 13–17, *supra*. Claim limitations that are "inherent in the abstract idea" do not provide an inventive concept. *Versata*, 793 F.3d at 1334. But regardless of the characterization of the abstract idea, every one of the elements on which Priceplay relies—a competitive activity, an auction, an association between the activity and the product, and a commitment to buy, *see* Br. 17—is an abstract economic concept or routine, conventional activity. Claim limitations

that "comprise [an] abstract concept" or amount to "'well-understood, routine, conventional activity'" cannot "transform an otherwise abstract idea into patent-eligible subject matter." *Ultramercial*, 772 F.3d at 715–16 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012)).

As the district court held, Priceplay's abstractions do not become less abstract "when combined." A10; *see also Alice*, 134 S. Ct. at 2357; *Ultramercial*, 772 F.3d at 715–16. Overlooking this part of the decision, Priceplay argues that the district court failed to consider the combination of claim elements. Br. 3, 16. That is incorrect. The district court made clear that "[t]he elements of the claims 'both individually *and as an ordered combination*' provide 'routine additional steps,' which do not transform the abstract idea into patent-eligible subject matter." A9 (emphasis added) (quoting *Ultramercial*, 772 F.3d at 715–16).

The district court was right: there is nothing inventive about the combination. The court cited multiple examples of conventional economic practices that contain three of the four elements on which Priceplay relies. To wit, a diner who orders a 72-ounce steak with the

promise that it will be free if consumed within an hour has (1) committed to a purchase in which (2) the price will be determined based on an activity (3) that is associated with the product purchased. Likewise, a defendant who enters into a high-low agreement with a plaintiff is (1) committing to pay for a cap on his liability for the plaintiff's claim, where (2) the amount of the payment will be determined based on an activity (the trial) (3) that is associated with the plaintiff's claim. *See* p. 8, *supra*.

In addition, the Babe Ruth coin-flip example contains two of Priceplay's elements—a commitment to buy and a competitive activity—and Priceplay admits it would also have met the "associated with the product" limitation if the contract terms had been determined based partly on Ruth's performance in a home-run derby. Br. 19. That twist is indistinguishable from the incentive contract that Ruth actually signed—under which the Yankees paid him $500 for each home run he hit, *see* A126—and from countless other incentive contracts.

The only element missing from these examples is an auction, but that limitation cannot save the claims. Setting prices via auction bidding is an abstract idea that cannot impart patent-eligibility. *See*

pp. 13–15, *supra*. Indeed, this Court has found a method of conducting auctions to be ineligible for patenting. *See In re Schrader*, 22 F.3d 290, 292–96 (Fed. Cir. 1994).

Significantly, the '982 patent confirms that there is nothing special about joining a competitive activity with an auction: a competitive activity can readily be used "in combination" with "other business models," with the products being sold as "common offerings always available, auction items . . . , reverse auction items . . . , specially-ordered lists of items . . . , or any other way." A17, at 4:60–66. Although the asserted claims limit the application of the abstract idea to an auction setting, they do not purport to solve any unique challenges posed by applying the idea in that setting. In Priceplay's words, an auction is "only one of a series of possible features for the disclosed invention." Br. 20.

Limiting the asserted claims to the auction setting is therefore insufficient to impart patent-eligibility. *See Bilski*, 561 U.S. at 612; *Intellectual Ventures*, 792 F.3d at 1366–67. As Priceplay acknowledges, "merely '[n]arrowing the abstract idea' to a 'particular environment' generally does not render it patent-eligible." Br. 17 (quoting

24

*Ultramercial*, 772 F.3d at 716).   Just as the concept of hedging risk could not be made patentable by applying it to the energy markets, *Bilski*, 561 U.S. at 609, the concept of a price-determining activity cannot be made patentable by applying it to auctions.   Otherwise, "a skilled patent drafter could craft a set of claims that together preempt an entire abstract idea by limiting each individual claim to a specific field."   *Cogent Med., Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1065 (N.D. Cal. 2014).

Priceplay asserts that the dependent claims "further narrow the scope of the claims" by reciting: selling to more than one buyer; receiving a commitment to buy from more than one buyer; and accepting payment information over the Internet.   Br. 22.   Priceplay does not contend that those dependent limitations impart an inventive concept, and they do not.   Priceplay offers no explanation for how its price-setting method could be abstract for one buyer but not for two.   And accepting payment information over the Internet is a "'well-understood, routine, conventional activit[y]' previously known to the industry."   *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1294); *see also, e.g.*, *Ultramercial*, 772 F.3d at 715 (invalidating claim that

required payment over the Internet). While the dependent claims "may have a [slightly] narrower scope than the [independent] claims, no claim contains an 'inventive concept.'" *Content Extraction*, 776 F.3d at 1349.

Priceplay further contends that the idea of combining the business concepts discussed above is "novel," Br. 17–18, 20, because "AOL's counsel had *no answer*" to the question whether he had "'seen anything like this on the [I]nternet.'" Br. 17 (quoting A199–200). In other words, Priceplay argues that the asserted claims are patentable because they were purportedly not anticipated. But this Court has already rejected this conflation of patent-eligibility under § 101 with anticipation under § 102. In *Ultramercial*, the plaintiff insisted that its claims were patent-eligible because they were "directed to a specific method . . . that was previously unknown and never employed on the Internet before." 772 F.3d at 714. This Court rejected the notion that "abstract ideas remain patent-eligible under § 101 as long as they are new ideas." *Id.*; *see also Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2117 (2013); *buySAFE*, 765 F.3d at 1352; *Parker v. Flook*, 437 U.S. 584, 588 (1978). Even "novel or non-routine components," or steps

"not previously employed in th[e] art," could not "turn[] an abstraction into something concrete." *Ultramercial*, 772 F.3d at 715–16.

As the district court recognized, therefore, "[n]ovelty . . . is not the issue when determining whether a claimed invention is directed to patentable subject matter." A8. There must also be an inventive application of the idea. As discussed above, there is none here.[2]

## C. Section 101 Requires Inventiveness, Not Multiplicity of Claim Limitations.

Finally, Priceplay contends that the asserted claims are "sufficiently narrow[]" to satisfy § 101. Br. 17. That is a *non sequitur*. "Narrow" is not the same as "concrete," "inventive," or "non-abstract." An abstract idea cannot be patented "even if the particular . . . abstract

---

[2] The parties have not yet litigated the distinct questions of anticipation and obviousness under §§ 102 and 103. The PTO, however, has determined that numerous claims of Priceplay's '253 patent, which is a parent of the patents in suit, were invalid over the prior art. *Ex Parte Priceplay*, 2012 WL 3679743. Like the patents in suit, the '253 patent generally claimed "systems and methods of doing business over . . . the Internet, where competition and/or entertainment are used to determine transaction prices between buyers and sellers." *Id.* at *1. And like the asserted claims, some of the invalidated claims of the '253 patent were limited to the "auction" setting. *Id.* at *6. This Court summarily affirmed the PTO's rejection of those claims.

idea at issue is narrow." *buySAFE*, 765 F.3d at 1353; *cf. Mayo*, 132 S. Ct. at 1303.

Thus, multiplication of claim limitations provides no substitute for an inventive concept. "'[A]ppending conventional steps, specified at a high level of generality,'" is "not 'enough' to supply an 'inventive concept.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1300, 1297, 1294). In *Ultramercial*, for example, a claimed sequence of "eleven individual steps" did not result in patentability, even when viewed as an "ordered combination," because all of the steps either "comprise[d] the abstract concept of offering media content in exchange for viewing an advertisement" or added only "routine, conventional activity." 772 F.3d at 715–16.

Similarly, in *buySAFE*, the claims were directed to the abstract concept of a third-party guarantee of a sales transaction, but some of the dependent claims were limited to much more specific forms of guarantees, such as "a surety bond; a specialized bank guaranty; a specialized insurance policy; and a safe transaction guaranty." 765 F.3d at 1352 (internal quotation marks omitted). This Court held that "[t]he dependent claims' narrowing to particular types of such relationships,

themselves familiar, does not change the analysis." *Id.* at 1355; *accord Bilski*, 561 U.S. at 599, 612 (dependent claims that "add[ed] token postsolution components," such as "the use of well-known random analysis techniques," were not patentable); *Content Extraction*, 776 F.3d at 1348–49 (claim limitations that gave the patent a "narrower scope" did not make it any less abstract); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 844 (E.D. Tex. 2014) (Bryson, J.) (the abstract idea of "granting retail salesmen a commission amounting to a percentage of their sales" cannot be converted into patent-eligible subject matter by narrowing its application to "only those in the business of selling running shoes").

## D.  Priceplay's Preemption Arguments Cannot Save Its Claims.

Priceplay contends that "claims that 'do not attempt to preempt *every* application of [an abstract] idea' generally satisfy the Section 101 threshold." Br. 16 (quoting *DDR Holdings*, 773 F.3d at 1259) (emphasis added).  But this Court's precedents do not require that claims preempt "every application" of an abstract idea to be patent-ineligible.  In *OIP Technologies*, for example, this Court invalidated claims for offer-based price optimization over the Internet, finding it irrelevant "that the

29

claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting," because this "d[id] not make them any less abstract."  788 F.3d at 1362–63.

Although preemption may support a finding of patent-ineligibility, the converse is not true: "While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility."  *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot.").  Claim limitations that merely narrow the scope of the claim, but do not "transform the nature of the claim into patent-eligible subject matter," *Ultramercial*, 772 F.3d at 716, cannot impart patent-eligibility.

Here, nothing in Priceplay's claims meaningfully transforms them beyond the abstract idea to which they are directed.  Absent an inventive concept, "the various narrowing limitations recited in [a patent's] claims . . . may make those claims narrower, [but] they don't make them any less abstract."  *Kroy IP Holdings v. Safeway, Inc.*, No.

2:12-cv-900-WCB, 2015 WL 3452469, at *12 (E.D. Tex. May 29, 2015)

(Bryson, J.), *appeal docketed*, No. 15-1782 (Fed. Cir. July 1, 2015).

## CONCLUSION

The Court should affirm the district court's judgment.

Dated: August 31, 2015

Respectfully submitted,

/s/ Daryl L. Joseffer

Heidi L. Keefe
  *Counsel of Record*
Mark R. Weinstein
Lam K. Nguyen
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
hkeefe@cooley.com
mweinstein@cooley.com
lnguyen@cooley.com

Michael G. Rhodes
COOLEY LLP
101 California Street
5th Floor
San Francisco, CA  94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
rhodesmg@cooley.com

*Counsel for Appellee*
  *Facebook Inc.*

Daryl L. Joseffer
  *Counsel of Record*
Paul Alessio Mezzina
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC  20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
djoseffer@kslaw.com
pmezzina@kslaw.com

Adam M. Conrad
KING & SPALDING LLP
100 N. Tryon Street, Ste. 3900
Charlotte, NC  28202
Telephone: (704) 503-2600
Facsimile: (704) 503-2622
aconrad@kslaw.com

*Counsel for Appellee Google Inc.*

George F. Pappas
  *Counsel of Record*
Peter A. Swanson
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
gpappas@cov.com
pswanson@cov.com

*Counsel for Appellee*
  *AOL Advertising, Inc.*

32

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7)(C), I certify that the foregoing brief, exclusive of the exempted portions as provided in Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), contains 5,846 words and therefore complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(A)(i).

DATED: August 31, 2015

/s/ Daryl L. Joseffer
Daryl L. Joseffer

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25 and Fed. Cir. R. 25, I certify that I have this day served the foregoing Brief via the Court's CM/ECF on all counsel of record.


DATED: August 31, 2015

/s/ Daryl L. Joseffer
Daryl L. Joseffer